UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TRUSTEES OF THE PAVERS AND ROAD                  :
BUILDERS DISTRICT COUNCIL WELFARE,               :
PENSION, and ANNUITY FUNDS and THE               :        **REPORT AND**
TRUSTEES OF THE LOCAL 1010                       :        **RECOMMENDATION**
APPRENTICESHIP, SKILL IMPROVEMENT,               :
AND TRAINING FUND,                               :        No. 22-CV-5050-KAM-JRC
                                                 :
                          Plaintiffs,            :
                                                 :
              -against-                          :
                                                 :
CAPE MOUNT HEAVY CONSTRUCTION &                  :
ASSOCIATES, LLC,                                 :
                                                 :
                          Defendant.             :
                                                 :
------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

Plaintiffs, the Trustees of the Pavers and Road Builders District Council Welfare,

Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill

Improvement, and Training Fund ("plaintiffs" or "Funds"), bring this action pursuant to the

Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145.  Compl. ¶ 1

(Dkt. 1).

Plaintiffs seek to recover delinquent employer contributions, union assessments, and dues

check-offs from defendant Cape Mount Heavy Construction & Associates, LLC ("defendant" or

"Cape Mount"), as well as late payment interest ("LPI"), accrued interest, liquidated damages,

audit costs, attorneys' fees, costs, and post-judgment interest.  Compl. ¶ 30, Wherefore Clause;

*see also* Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem.") at 17-18 (Conclusion)

(Dkt. 15).  Upon plaintiffs' application and in light of defendant's failure to appear in or

otherwise defend this action, the Clerk of the Court entered defendant's default on September 23, 2022.  Dkt. 8.  Plaintiffs now move for default judgment against defendant.  *See generally* Mot. for Default J. (Dkt. 9); Pls.' Mem. (Dkt. 15).

Currently pending before this Court, on a referral from the Honorable Kiyo A. Matsumoto, is plaintiffs' motion for default judgment.  *See* Order Referring Motion dated April 6, 2023.  For the reasons set forth below, this Court respectfully recommends granting in large part plaintiffs' motion for default judgment as set forth below.

## I.    Relevant Factual and Procedural Background

The following facts are drawn from plaintiffs' Complaint and declarations in support of plaintiffs' motion (Dkts. 1, 10-14), and are accepted as true for purposes of adjudicating this motion.

The Funds are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with Section 302(c) of the LMRA.  Compl. ¶ 4.  The Funds are employee benefit plans within the meaning of Section 3(3) of ERISA and are administered in Whitestone, New York.  *See id.*  Defendant is a domestic limited liability corporation, organized under the laws of the State of New York, engaged in the construction business.  *See id.* ¶ 5.

Cape Mount and the Highway, Road, and Street Construction Laborers Local Union 1010 (the "Union") are bound by a series of collective bargaining agreements ("CBAs").  *See id.* ¶ 6; *see also* Declaration of Keith Loscalzo ("Loscalzo Decl.") ¶¶ 5-13 (Dkt. 10).  The CBAs provide that the "[e]mployer is bound by all of the terms and conditions of the Agreements and Declarations of Trust [hereafter, 'Trust Agreements'] with respect to the Welfare Fund, Pension Fund, Training Fund and Annuity Fund, which Agreements and Declarations of Trust are hereby

made part of [these CBAs] and are incorporated herein."  Compl. ¶ 7; Loscalzo Decl. ¶ 21;

Declaration of Joseph Montelle ("Montelle Decl.") ¶ 5 (Dkt. 11); *see, e.g.,* Loscalzo Decl. Exs.

A-C, Art. IX, § 1(b) (Dkts. 10-1, 10-2, 10-3).

The Trust Agreements, in turn, provide that in operating and administering the Funds, the

Board of Trustees shall have the "exclusive right to interpret the Plan and decide any matters

arising thereunder in connection with the administration of the Plan" and "may from time to time

establish rules for the administration of the Plan and the transaction of business."  Compl. ¶ 8;

Montelle Decl. ¶ 6.  In accordance with that provision, plaintiffs promulgated a Policy for

Collection of Delinquent Fringe Benefit Contributions ("Collection Policy"), to which defendant

is bound.  Montelle Decl. ¶ 7; Montelle Decl. Ex. E ("Collection Policy") (Dkt. 11-2); Compl.

¶ 9.

The Collection Policy provides that (1) contributions and remittance reports are due no

later than 35 days after the end of a month during which the hours were worked; (2)

contributions are delinquent one calendar day after the due date; (3) if defendant fails to make

contributions when due, it is liable to the Funds for interest on the unpaid contributions at an

annual rate of ten percent (10%) and liquidated damages of ten percent (10%) of the amount of

the unpaid contributions; and (4) if legal action is commenced, defendant is obligated to pay all

costs, including reasonable audit and accounting expenses and attorneys' fees and costs.

Montelle Decl. ¶¶ 8-9, 11; Montelle Decl. Ex. E, Art. II (Dkt. 11-2); Compl. ¶¶ 16-18; Loscalzo

Decl. ¶ 20.

The CBA requires defendant to "remit specified benefit contributions to the Funds and

related entities on behalf of which the Funds act as collection agents, in connection with all work

performed within the trade and geographical jurisdiction of the Union ('Covered Work')."

Compl. ¶ 10; *see also* Loscalzo Decl. ¶ 14.  The CBAs also require defendant to remit dues check-offs and other contributions owed to the Union ("union assessments") in connection with Covered Work performed by each of defendant's employees.  Loscalzo Decl. ¶ 15; Loscalzo Decl. Exs. A-C, Art. IX (Dkts. 10-1, 10-2, 10-3); Compl. ¶ 11.  The CBA requires employers to submit all benefit contributions, union assessments and dues check-offs to the Funds pursuant to a "one-check system."  Loscalzo Decl. ¶ 18; Loscalzo Dec., Exs. A-C, Art. IX, §§ 1(b), 4 (Dkts. 10-1, 10-2, 10-3) ("parties to this Agreement agree to develop a 'one check' system for all contributions"; "The Employer shall remit [dues check-offs] monthly together with its Pension, Training, Welfare and Annuity contributions.").  The CBAs and Collection Policy further provide that the Funds may audit an employer's books and records to ensure the employer is making the required benefit contributions to the Funds.  Loscalzo Decl. ¶ 19; Loscalzo Decl. Exs. A-C, Art. XII (Dkts. 10-1, 10-2, 10-3); Montelle Decl. ¶ 10; Montelle Decl. Ex. E, Art. IV (Dkt. 11-2); Compl. ¶ 14.

### A.    Audit Findings

Pursuant to the CBAs and Collection Policy, the Funds conducted an audit of Cape Mount covering the period January 1, 2017 through December 31, 2020 (the "Audit"). Declaration of Robert Castiglia ("Castiglia Decl.") ¶ 4 (Dkt. 12); Compl. ¶ 21.  The Audit revealed that Cape Mount failed to report hours paid or worked by its employees under the CBAs and failed to remit contributions to the Funds in the amount of $189,169.71, as well as union assessments of $10,930.03, and dues check-offs of $5,949.73.  Castiglia Decl. ¶ 8; Castiglia Decl. Ex. I (Dkt. 12-1); Compl. ¶ 22.  The Funds incurred audit costs of $5,890.  Compl. ¶ 23. Cape Mount failed to pay any portion of the Audit.  *Id.* ¶ 24.

**B.    Delinquent Contributions**

Plaintiffs have engaged the services of a third-party administrator, Zenith American

Solutions Inc. ("Zenith"), to monitor the payment of benefit contributions and union assessments

by signatory employers such as Cape Mount.  Declaration of Philip Wilson ("Wilson Decl.") ¶ 6

(Dkt. 13).  In this capacity, Zenith monitors contribution payments made by employers and

reconciles the payments against the remittance reports submitted by the employer detailing the

number of hours of Covered Work performed by its employees.  Wilson Decl. ¶ 7.

In the course of monitoring remittance reports and contributions, Zenith determined that

Cape Mount failed to remit contributions of $231,186.86, union assessments of $10,326.45, and

dues check-offs of $6,964.15 for the periods September 2021 and May 2022 through September

2022.  Montelle Decl. ¶¶ 20, 25, 27; Montelle Decl. Ex. G (Dkt. 11-4); Compl. ¶ 26; Wilson

Decl. ¶¶ 11-13; Wilson Decl. Ex. J (Dkt. 13-1).[1]

**C.    Late Payment Interest**

Lastly, Cape Mount remitted benefit contributions to the Funds for the periods October

through December 2016, May 2017, July 2017 through August 2018, October 2018, November

2018, February 2019 through June 2019, August 2019, November 2019, January 2020 through

March 2020, June 2020, July 2020, and September 2020 through April 2022 beyond their

respective due dates as set forth in the CBAs and Collection Policy, thereby incurring late

payment interest totaling $17,948.87.  Compl. ¶ 28; Wilson Decl. ¶¶ 14-22; Wilson Decl. Ex. K

(Dkt. 13-2); Montelle Decl. ¶ 30.

---

[1] For the period September 2021, defendant failed to submit contributions of $1,737.15.
Montelle Decl. ¶ 20.  For the period May 2022 through September 2022, defendant failed to
remit contributions of $229,449.71, union assessments of $10,326.45, and dues check-offs and
payments to the Political Action Committee (collectively referred to as "dues check-offs") of
$6,964.15.  Montelle Decl. ¶¶ 25, 26.

* * *

On August 25, 2022, plaintiffs commenced this action.  *See generally* Compl.;

Declaration of Adrianna R. Grancio ("Grancio Decl.") ¶ 3 (Dkt. 14).  On August 26, 2022,

plaintiffs served the Summons and Complaint upon defendant, by serving the New York State

Secretary of State as designated agent pursuant to Section 303 of the Limited Liability Company

Law.  Dkt. 6.  Defendant failed to file an answer or otherwise appear in this matter, and on

September 23, 2022, the Clerk of the Court entered a Certificate of Default in this matter noting

the default of the defendant.  Dkt. 8.

On November 29, 2022, plaintiffs moved for a default judgment.  Dkt. 9.  Plaintiffs

request a default judgment against defendant Cape Mount in the amount of $620,416.66,

including the following:

(1) delinquent contributions of $189,169.71 and union assessments and dues check-offs

totaling $16,879.76 as set forth in the Audit, plus interest thereon of $80,339.96, liquidated

damages of $18,916.97, and audit fees and costs of $5,890;

(2) delinquent contributions of $231,186.86 and union assessments and dues check-offs

totaling $17,290.60 for the periods September 2021 and May 2022 through September 2022, plus

interest thereon of $5,219.97, and liquidated damages of $23,118.69;

(3) late payment interest of $17,948.87 for the periods October through December 2016,

May 2017, July 2017 through August 2018, October 2018, November 2018, February 2019

through June 2019, August 2019, November 2019, January 2020 through March 2020, June

2020, July 2020, and September 2020 through April 2022;

(4) attorneys' fees and expenses of $14,455.27;

(5) additional interest on the actual and estimated delinquent contributions calculated at

the rate set forth in the CBAs and Collection Policy from November 29, 2022 through the date of

judgment; and

(6) post-judgment interest calculated at the statutory rate. *See* [Proposed] Default

Judgment (Dkt. 14-6).

## II.     Liability Under ERISA and the LMRA

"When a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend," a plaintiff may apply to the court for a default judgment. *See* Fed. R.

Civ. P. 55(a), (b)(2).  When evaluating a plaintiff's application for a default judgment, "a court is

required to accept all [] factual allegations as true and draw all reasonable inferences in

[plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it

remains for the court to consider whether the unchallenged facts constitute a legitimate cause of

action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs.,*

*Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotations omitted); *see also TAGC*

*Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("prior to entering

default judgment, a district court is required to determine whether the plaintiff's allegations

establish the defendant's liability as a matter of law.") (internal quotations omitted).

Plaintiffs' Complaint establishes defendant's liability under ERISA and the LMRA.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such contributions in accordance
> with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  "ERISA vests the Court with jurisdiction over civil actions brought by

fiduciaries of employee benefit plans to enforce provisions of such plans." *Trs. of the Local 7*

*Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y.

7

Feb. 18, 2011), *report and recommendation adopted*, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Here, plaintiffs allege that defendant is an "employer," and that the Funds are "employer and employee trustees of multiemployer labor-management trust funds," and "employee benefit plans" under ERISA. Compl. ¶¶ 4-5. Plaintiffs further allege that defendant was obligated to make contributions to plaintiffs pursuant to CBAs and that defendant failed to make the required contributions. *See id.* at ¶¶ 6-30. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions.

Section 301(a) of the LMRA authorizes this Court to enforce the CBAs. *See* 29 U.S.C. § 185(a). Plaintiffs are "employer and employee trustees of multiemployer labor-management trust funds" under the LMRA and defendant is "an employer in an industry affecting commerce within the meaning of section 501 of the LMRA." Compl. ¶¶ 4, 5; *see also* 29 U.S.C. §§ 142, 186(c). Defendant was obligated to pay union assessments pursuant to the CBAs and failed to do so. Compl. ¶¶ 11, 20-30. Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA.[2] *See Finkel v. Allstar Elec. Corp.*, No. 11-CV-

---

[2] Here, plaintiffs seek to recover unpaid union assessments even though the Union is not a party to the action, as well as unpaid contributions to certain benefit funds that are not named plaintiffs. Generally, the designation of plaintiff-trustees as collection agent for the union or non-party benefit funds would not confer standing on plaintiffs to bring claims on those non-parties' behalf. *See Trs. of Loc. 7 Tile Indus. Welfare Fund v. Castle Stone and Tile, Inc.*, No. 17-CV-3187, 2022 WL 2063267, at *16 (E.D.N.Y. June 8, 2022); *Trs. of Loc. 7 Tile Indus. Welfare Fund v. AM Tile Specialty Constr.*, No. 19-CV-1809, 2020 WL 7034025, at *7 (E.D.N.Y. Sept. 23, 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020). However, under the circumstances, where the submission of union assessments to the Union and benefit contributions to non-plaintiff benefit funds were made pursuant to a "one-check" system as provided in the applicable collective bargaining agreement, courts in this District have permitted plaintiff-trustees to recover amounts owed to the Union and non-plaintiff funds. *See Trs. of the Pavers v. Atl. Steel Sols., LLC*, No. 22-CV-5047, 2023 U.S. Dist. LEXIS 85884, at *3 n.1 (E.D.N.Y. May 16, 2023); *Trs. of Pavers and Rd. Builders Dist. Council Welfare, Pension, and Annuity Funds v. Litehouse Builders, Inc.*, No. 22-CV-7237, 2023 WL

3222, 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability

under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the

Required Contributions in accordance with their obligations under the CBAs.").

In light of the foregoing, this Court respectfully recommends granting default judgment

on plaintiffs' ERISA and LMRA claims.

## III.    Damages

While the allegations of a complaint concerning liability are deemed admitted upon entry

of default, allegations relating to damages are not.  *See Cement & Concrete Workers Dist.*

*Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v.*

*Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citing *Greyhound*

*Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  Rather, a court must

ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering

judgment in the amount demanded.  *See Fustok v. ContiCommodity Servs., Inc*., 873 F.2d 38, 40

(2d Cir. 1989).  A court may make this determination based upon evidence presented at a hearing

or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2);

*Joe Hand Promotions, Inc. v. Levin*, No. 18-CV-9389, 2019 WL 3050852, at *3 (S.D.N.Y. July

12, 2019) (holding that a hearing is "not necessary as long as [the Court] ensure[s] that there was

a basis for the damages specified in the default judgment") (alterations in original) (internal

quotations omitted); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits

and documentary evidence as the basis for determining damages to be awarded in a default

judgment).

Plaintiffs have submitted in support of their motion declarations from the following

---

3306687, at *2 (E.D.N.Y. May 8, 2023).

individuals: Keith Loscalzo, an officer of plaintiff Highway, Road and Street Construction Laborers Local Union 1010 (Dkt. 10); Joseph Montelle, Administrator of the Pavers and Road Builders District Council Welfare, Pension, Annuity Funds and Local 1010 Apprenticeship, Skill Improvement and Training Funds (Dkt. 11); Philip Wilson, Contributions Accounting Manager for Zenith (Dkt. 13); and Robert Castiglia, a partner in the accounting firm of Castligia, LLP, which is the auditing firm for plaintiffs (Dkt. 12). These declarations detail the calculation of defendant's delinquent contributions and union assessments as per the CBAs, as well as calculations of interest and audit costs incurred. Further, plaintiffs have provided copies of the Trust Agreements and Collection Policy (Montelle Decl. Ex. D ("Trust Agreements") (Dkt. 11-1); Ex. E ("Collection Policy") (Dkt. 11-2)), along with the reports which form the basis by which these calculations were made. Defendant has not submitted any opposition.

A. **Delinquent Contributions, Union Assessments, and Dues Check-Offs**

"An employer's failure to contribute an agreed upon amount to a benefit plan pursuant to a collective bargaining agreement is an ERISA violation creating a right of action for the benefits due." *Masino v. A to E, Inc.,* No. 07-CV-3462, 2009 WL 5184340, at *2 (E.D.N.Y. Dec. 21, 2009) (internal quotations and citations omitted). ERISA, 29 U.S.C. § 1132(g)(2), authorizes the Funds to recover:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of –

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the

defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Section 1132(g) "thus creates a mandatory right to interest, liquidated damages, and attorney's fees in any case in which a judgment in favor of the plan is awarded." *Masino*, 2009 WL 5184340, at *2 (quoting *Trs. of the Bldg. Servs. 32B-J, Pension, Health & Annuity Funds v. Linden Realty Assocs.,* No. 94-CV-1358, 1995 WL 302454, at *7 (E.D.N.Y. May 8, 1995)) (internal quotations omitted).

During the audit period from January 1, 2017 through December 30, 2020, the parties were bound by a series of CBAs, which ran consecutively from July 1, 2015 through June 30, 2018, then from July 1, 2018 through June 30, 2021, then from July 1, 2021 through June 30, 2024.  *See* 2015-2018 CBA (Dkt. 10-1); 2018-2021 CBA (Dkt. 10-2); 2021-2024 CBA (Dkt. 10-3).  At no time did Cape Mount provide notice to terminate any of the CBAs and Cape Mount remained bound by the CBAs throughout the relevant time period at issue in this case.  Loscalzo Decl. ¶¶ 11, 12.

In relevant part, the CBAs required defendant to submit contributions and union assessments at agreed-upon rates for all employees performing Covered Work.  The CBAs also stated that if an employer fails to pay contributions as provided for in the agreement, the employer shall pay, in addition to the amounts due and unpaid:

(a) Annual interest at the rate of 10% per annum;

(b) Costs and attorneys' fees;

(c) Liquidated damages in the amount of ten (10%) percent[,] audit costs and all amounts, fees costs, penalties and disbursements provided by statute or regulation, including but not limited to the Employee Retirement Income Security Act of 1974 as amended ("ERISA").

2015-2018 CBA, Art. IX, § 5 (Dkt. 10-1) at ECF page 28; 2018-2021 CBA, Art. IX, § 5 (Dkt. 10-2) at ECF pages 26-27; *see also* 2021-2024 CBA, Art. IX, § 5 (Dkt. 10-3) at ECF page 27.[3]

The Funds conducted an audit of defendant's books and records, specifically the "contribution reports, individual earning records, tax returns, and W-2 forms," for the period January 1, 2017 through December 30, 2020 (referred to as "audit period") and prepared a declaration with supporting documentation in this case. Castiglia Decl. ¶ 6; Castiglia Decl. Ex. I ("Audit Report") (Dkt. 12-1). As set forth in the Audit Report, the auditors concluded that defendant owed unpaid contributions to the Funds in the amount of $189,169.71, union assessments of $10,930.03, and dues check-offs of $5,949.73. Castiglia Decl. ¶ 8.

In addition, Zenith monitored Cape Mount's contribution payments and, as set forth in delinquency reports, found that Cape Mount owed contributions of $231,186.86 ($1,737.15 + $229,449.71) for the periods September 2021 (unpaid contributions of $1,737.15), and May 2022 through September 2022 (unpaid contributions of $229,449.71). Wilson Decl. ¶¶ 11-13; Montelle Decl. ¶¶ 20, 25; *see also* Compl. ¶ 26.

Further, Zenith determined that Cape Mount failed to remit union assessments of $10,326.45 and dues check-offs of $6,964.15 for the period May 2022 through September 2022 for a total balance of union assessments and dues check-offs owed in the amount of $17,290.60 ($10,326.45 + $6,964.15). Montelle Decl. ¶¶ 25, 26; *but see* Wilson Decl. ¶ 13.[4]

---

[3] Cites to "ECF page" refer to the page number assigned by the Electronic Case Filing ("ECF") system.

[4] The declarations of Montelle and Wilson set forth different amounts of union assessments owed for the period May 2022 through September 2022. *Compare* Montelle Decl. ¶ 25, *with* Wilson Decl. ¶ 13. Montelle states that Zenith found that defendant failed to pay union assessments of $10,326.45 for the period May 2022 through September 2022. However, Wilson, the Contributions Accounting Manager for Zenith, reported that Cape Mount failed to pay union assessments of $9,966.45 – a discrepancy of $360. Based on a review of the discrepancy report generated by Zenith attached to Wilson's declaration as Exhibit J, the correct unpaid union

Upon review of the Audit Report, this Court recommends granting plaintiffs damages in the amount of **$189,169.71** in delinquent contributions, and **$16,879.76** ($10,930.03 + $5,949.73) in unpaid union assessments and dues check-offs.

Based on the assessment from Zenith, including a review of the discrepancy report (Montelle Decl. ¶¶ 20, 25; Wilson Decl. Ex. J (discrepancy report) (Dkt. 13-1)), and remittance reports (Montelle Decl. Ex. G) (Dkt. 11-4), this Court further recommends granting additional damages in the amount of **$231,186.86** in delinquent contributions, and **$17,290.60** ($10,326.45 + $6,964.15) in unpaid union assessments and dues check-offs for the periods September 2021 and May 2022 through September 2022.[5]

## B.    Interest on Unpaid Contributions

Plaintiffs are entitled to prejudgment interest on unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(B).  ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).  Pursuant to the CBAs and Collection Policy, where an employer

---

assessment is likely $10,326.45 as set forth in Montelle's declaration, and the Court uses this figure in calculating the amount of unpaid union assessments owed by defendant.

[5] To be sure, the amount plaintiffs seek for unpaid contributions and union assessments from May 2022 through September 2022 was not included in the Complaint.  *See* Compl. ¶ 36.  Rule 54(c) of the Federal Rules of Civil Procedure states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The Rule limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007).  Here, however, Rule 54(c) permits a court to award damages accruing during the pendency of the litigation because the pleading put the defendant on notice that the plaintiff might seek such damages. *See Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) (citing cases and treatise). Because the Complaint gave defendant such notice in this case, *see* Compl. ¶ 36, Wherefore Clause, any delinquent contributions (and related damages) accruing after plaintiffs commenced this action are recoverable.

fails to pay contributions as required, the employer shall be responsible for "interest at the rate of ten percent (10%) per annum (calculated from the Due Date)."  Montelle Decl. ¶¶ 11, 15; Collection Policy, Art. II, § 5 (Dkt. 11-2).  Contributions are due on or before the thirty-fifth day after the close of the month in which the work was performed.  Loscalzo Decl. ¶ 17.  Plaintiffs have submitted spreadsheets setting forth the computations of interest on the amount of unpaid contributions through November 22, 2022.  Montelle Decl. Ex. F (Dkt. 11-3) and Ex. H (Dkt. 11-5).  As set forth in the spreadsheets and explained in Mr. Montelle's declaration, to calculate the interest on the unpaid contributions, plaintiffs calculated the number of days between the due date and November 22, 2022 (the date Montelle's declaration was executed), to determine the number of late days for each contribution owed.  For example, contributions for the period ending April 30, 2017 were due by June 4, 2017 (35 days after April 30, 2017, the close of the month) and were 1997 days late as of November 22, 2022.  Plaintiffs then calculated the daily interest rate by multiplying the contributions due per month by the ten percent (10%) annual interest rate provided for in the CBAs and Collection Policy, and then divided the full year of interest by 365 days.  For April 2017, the contributions due ($1,131.30) were multiplied by the ten percent (10%) interest rate to yield a total yearly interest of $113.13.  The yearly interest of $113.13 was then divided by 365 days to render the daily interest rate of $0.31.  The daily interest rate ($0.31) was then multiplied by the number of days the contribution was late (1997), to yield the total interest of $619.07 for the April 2017 period.  This calculation was conducted for all months contained in the audit.

Plaintiffs seek interest on the unpaid contributions of $80,339.96 stemming from unpaid contributions as set forth in the Audit Report (Montelle Decl. ¶ 16), and $5,219.97 stemming from unpaid contributions as determined by Zenith (Montelle Decl. ¶ 28).

Pursuant to section 502 of ERISA, plaintiffs are entitled to interest on the delinquent contributions calculated at the rate provided by the plan. *See* 29 U.S.C. § 1132(g)(2). Having reviewed the calculation tables submitted by plaintiffs, this Court finds that they accurately reflect the interest due. However, since interest continues to accrue on all outstanding principal through the date of the entry of judgment, a specific interest award cannot be determined at this time. This Court respectfully recommends that interest be awarded on the unpaid principal at the rate of ten percent per annum, through the date of judgment.

### C.    Liquidated Damages

"Section 502 of ERISA provides for liquidated damages in an amount equal to the greater of the interest due on the unpaid contributions, or up to twenty percent of the unpaid contributions as provided in the collective bargaining and trust agreements." *Sullivan v. Marble Unique Corp.*, No. 10-CV-3582, 2011 WL 5401987, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011); *see also Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773, 2019 WL 1130729, at *7 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019).

Here, the Collection Policy provides for liquidated damages at ten percent of the delinquent contributions owed. Collection Policy, Art. II, § 5 (Dkt. 11-2). Plaintiffs seek liquidated damages of $18,916.97 reflecting 10 percent of the unpaid contributions of $189,169.71 based on the Audit, and additional liquidated damages of $23,118.69 reflecting 10 percent of the unpaid contributions of $231,186.86 for the periods September 2021 and May 2022 through September 2022 based on the delinquency reports generated by Zenith. *See* Pls.' Mem. at 11; Montelle Decl. ¶¶ 19, 29. This Court respectfully recommends awarding plaintiffs liquidated damages for delinquent contributions based on the Audit of **$18,916.97**, and

**$23,118.69** for the time periods September 2021 and May 2022 through September 2022.

  **D.**  **Interest on Late Paid Contributions**

  Plaintiffs seek interest in the amount of $17,948.87 for late payment of contributions covering the periods October through December 2016, May 2017, July 2017 through August 2018, October 2018, November 2018, February 2019 through June 2019, August 2019, November 2019, January 2020 through March 2020, June 2020, July 2020, and September 2020 through April 2022.  *See* Montelle Decl. ¶ 30.  Under Article II of the Collection Policy, if an employer fails to make contributions when due, the employer is "liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the Due Date)."  Montelle Decl. ¶ 11; Collection Policy, Art. II, § 5.

  On behalf of plaintiffs, Zenith monitors late payment interest ("LPI") that accrues when employers pay benefit contributions past the due date.  Wilson Decl. ¶ 14 (Dkt. 13); Wilson Decl. Ex. K (Dkt. 13-2).  Zenith generated a late payment interest report that calculates the interest due based on late payments.  Wilson Decl. ¶¶ 14-19; Wilson Decl. Ex. K (LPI report) (Dkt. 13-2).  The LPI report includes the months for which contributions were paid late, the dates on which plaintiffs received the contributions, and the assessed late payment interest.  Wilson Decl. ¶¶ 14-22; Wilson Decl. Ex. K (LPI report) (Dkt. 13-2).

  In calculating the late payment interest, Zenith first counted the number of days that the contributions were paid late.  Wilson Decl. ¶ 20.  Second, Zenith calculated the daily interest rate by multiplying the contribution amount due per month by the ten percent annual interest rate found in the CBAs and Collection Policy.  The result was then divided by 365 days to derive a daily interest rate.  *See id.*  Finally, Zenith multiplied the daily interest rate by the number of days the contributions were paid late to yield the total late payment interest.  *See id.*  Based on

this methodology, Zenith determined that defendant owed plaintiffs late payment interest of $17,948.87 for the periods October through December 2016, May 2017, July 2017 through August 2018, October 2018, November 2018, February 2019 through June 2019, August 2019, November 2019, January 2020 through March 2020, June 2020, July 2020, and September 2020 through April 2022.  Wilson Decl. Ex. K (Dkt. 13-2); Montelle Decl. ¶ 30.[6]

Having reviewed plaintiffs' calculations and supporting documentation, this Court finds the late payment interest calculations accurate, and respectfully recommends awarding plaintiffs a total of **$17,948.87** in late payment interest.

### E.  Audit Costs

Plaintiffs seek audit fees of $5,890 for the audit conducted by Castiglia, LLP in or about January 2022.  Castiglia Decl. ¶ 11.  Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E), and regularly award reasonable audit costs.  *See, e.g.*, *Gesualdi v. Andrews Trucking Corp.*, No. 09-CV-565, 2010 WL 2292218, at *1 (E.D.N.Y. May 14, 2010) (awarding plaintiffs $13,382.50 in audit fees), *report and recommendation adopted*, 2010 WL 2292392 (E.D.N.Y. June 3, 2010).  [R]equests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of the audit costs."  *Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc.*, No. 08-CV-3214, 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotations omitted).  "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended."  *Gesualdi v. Diversified Carting, Inc.*, No. 10-CV-

---

[6] Mr. Wilson's declaration references late payment interest for the period "January through" October 2016.  Wilson Decl. ¶ 22.  However, the reference to "January through" October appears to be a typographical error as the LPI report itself does not cover the erroneously-referenced time period.  Wilson Decl. Ex. K (Dkt. 13-2).

2561, 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotations omitted).

Under the Collection Policy, plaintiffs are entitled to recover any expenses incurred in determining the amount of a delinquency, including reasonable audit and accounting expenses. Montelle Decl. ¶¶ 11, 31(c); Collection Policy, Art. II, § 5 (Dkt. 11-2). According to Mr. Castiglia, partner with the accounting firm of Castiglia, LLP, which conducted the audit, auditors spent 95 hours preparing the Audit Report at an hourly rate of $95. Castiglia Decl. ¶¶ 2, 11. Based on the auditor's report to plaintiffs, and the Funds letter to defendant, it appears that the auditors charged plaintiffs $5,890 to conduct the audit. Castiglia Decl. Ex. I (Audit Report) (Dkt. 12-1).

Mr. Castiglia states in his declaration that his auditors spent 95 hours preparing the report at an hourly rate of $95. However, 95 hours multiplied by $95 per hour totals $9,025, not $5,890 (the amount being sought here). Castiglia Decl. ¶ 11 (Dkt. 12). Given that plaintiffs seek audit costs that are far less than $9,025, this Court finds the requested costs of $5,890 to be reasonable. Plaintiffs have shown satisfactorily that they incurred audit costs, and this Court respectfully recommends awarding plaintiffs those audit costs of **$5,890**.

### F.    Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)); *see also Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right). The post-judgment interest rate in ERISA actions is tied to the formula for calculation set forth in 28 U.S.C. § 1961(a), which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a); *see also Genworth Life and Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008); *Trs. of the I.B.E.W. Local Union No. 488 Pension Fund v. Norland Elec., Inc.*, No. 11-CV-709, 2015 WL 3581011, at *9 (D. Conn. June 5, 2015) ("Post-judgment interest is applicable in the ERISA context in the same manner in which it is awarded in other civil actions in which money damages are awarded."). Moreover, post-judgment interest "shall be computed daily [from the date of judgment] to the date of payment."  28 U.S.C. § 1961(b).

Here, plaintiffs seek an award of post-judgment interest in accordance with 28 U.S.C. § 1961.  Pls.' Mem. at 17.  This Court finds such an award to be mandatory, and respectfully recommends awarding post-judgment interest, to be calculated in accordance with 28 U.S.C. § 1961(a) and (b) from the date of the entry of judgment to the date of payment.

## IV.    Attorneys' Fees and Costs

Plaintiffs seek to recover their attorneys' fees and costs in this action.  Pls.' Mem. at 14-17.  Plaintiffs are entitled to an award of "reasonable attorney's fees and costs" under ERISA and the applicable CBAs.  *See* 29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1505-06 (2d Cir. 1995); *Board of Trs. of UFCW Local 342 Pension Fund v. Merrick Assoc. Mkt., Inc.*, No 11-CV-4310, 2012 WL 4049845, at *5 (E.D.N.Y. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 4049996 (E.D.N.Y. Sept. 13, 2012).

Under Second Circuit precedent, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay."  *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). The "presumptively reasonable fee" is historically known as the "lodestar." *Arbor Hill*, 522 F.3d at 183. "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged." *Fermin v. La Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015); *see generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Second Circuit precedent requires movants to include "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done" in support of fee petitions. *See Carey*, 711 F.2d at 1148. "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992). Fee petitions supported by "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991).

District courts may exercise broad discretion in determining the reasonableness of an attorneys' fee petition. *See Chocolatl v. Rendezvous Cafe, Inc.*, No. 18-CV-3372, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020). Courts often consider case-specific factors including the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

20

*Arbor Hill*, 522 F.3d at 186 n.3 (citation omitted).

The reasonable hourly rate should be consistent with the prevailing rates in the local legal community for similar work by lawyers of comparable experience and skill. *See Reilly v. Commerce,* No. 15-CV-5118, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016) (quoting *Noble v. Crazetees.com*, No. 13-CV-5086, 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015)). "Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, No. 18-CV-0126, 2019 WL 3937126, at *14 (E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)). "The 'community' is generally considered the district where the district court sits." *Id.* (citing *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

The ordinary rates for attorneys in the Eastern District of New York are "approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Dermansky v. Telegraph Media, LLC*, No. 19-CV-1149, 2020 WL 1233943, at *7 (E.D.N.Y. Mar. 13, 2020) (quoting *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068, 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020)). A $100 hourly fee for paralegals has been found reasonable. *See Musical Prods. Inc. v. Roma's Record Corp.*, No. 05-CV-5903, 2009 WL 3052630, at *10 (E.D.N.Y. Sept. 23, 2009) (citing *Morin v. Nu-Way Plastering*, No. 03-CV-405, 2005 WL 3470371 (E.D.N.Y. Dec. 19, 2005)). In addition to ordinary rates, courts also consider the complexity of a case, the time it requires, and any returns an attorney might expect from litigation. *See Sheldon v. Plot Commerce*, No. 15-CV-5885, 2016 WL 5107072, at *18-*19 (E.D.N.Y. Aug. 26, 2016) (quoting *Arbor Hill*, 522 F.3d at 184). The Court should be mindful that cases of default are "relatively simple legal matters," but courts can

still take an attorney's skill in a specialized field into account. *See Sheldon*, 2016 WL 5107072, at *19.

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. In reviewing a fee application, the court should exclude "excessive, redundant, or otherwise unnecessary" hours. *See Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The court should examine each entry "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, plaintiffs seek $13,959.50 in attorneys' fees and $495.77 in costs for a total of $14,455.27. Grancio Decl. ¶¶ 21, 22, 23(d). Two associate attorneys (Adrianna R. Grancio and Maura Moosnick) with Virginia & Ambinder, LLP ("V&A") and one law clerk pending admission to the bar (Matthew Vani) billed plaintiffs at the same rate of $290 per hour. *Id.* ¶¶ 15-17. Plaintiffs seek fees of $13,833 for 47.7 hours worked by counsel. Plaintiffs also seek to recover additional fees of $126.50 for 1.1 hours of work performed by legal assistants billing at the rate of $115 per hour. Grancio Decl. ¶¶ 14-18; Grancio Decl. Ex. O (Billing Records) (Dkt. 14-4).

Plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by their counsel. *See* Billing Records (Dkt. 14-4). Ms. Grancio, a 2016 graduate of St. John's University School of Law, was, at the time the motion was filed, an associate at V&A. Grancio Decl. ¶ 15. Ms. Moosnick, a 2021 graduate of Fordham University

School of Law, was an associate at V&A. *See id*. at ¶ 16. Mr. Vani, a 2022 graduate of St. John's University School of Law, was a law clerk at V&A pending admission to the bar. *See id*. ¶ 17. In addition to Ms. Grancio, Ms. Moosnick, and Mr. Vani, V&A billed its legal assistants, Eva Keating and Abigail Frankel, at a rate of $115 per hour for work performed in connection with this matter. *See id*. ¶ 18 & n.1.

With respect to the hourly rate sought for counsel's time, given the rates approved by courts in this district recently, this Court finds Ms. Grancio's rate to be reasonable, but considers the rates for Ms. Moosnick and Mr. Vani unreasonably high. At the time of filing, Ms. Grancio was a senior associate and a 2016 law school graduate. Grancio Decl. ¶ 15. Ms. Moosnick, however, was a junior associate with less than two years of practice experience, having graduated from law school in 2021. *See id*. at ¶ 16. Mr. Vani had not yet been admitted to the bar (his application for admission was pending) and graduated from law school in 2022. *See id*. at ¶ 17. The ordinary rates for attorneys in the Eastern District of New York are "approximately . . . $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." *Dermansky*, 2020 WL 1233943, at *7 (quoting *Rudler*, 2020 WL 473619, at *4). Accordingly, this Court respectfully recommends awarding attorneys' fees for services rendered by Ms. Grancio at the requested rate of $290 per hour, but awarding attorneys' fees for services rendered by Ms. Moosnick and Mr. Vani at a reduced rate. In light of the seniority and experience of Ms. Moosnick and Mr. Vani, this Court respectfully recommends awarding attorneys' fees at a rate of **$200** per hour for Ms. Moosnick and **$100** per hour for Mr. Vani.

As to Ms. Keating and Ms. Frankel, this Court considers the requested hourly rate of $115 per hour for legal assistants unreasonably high. *See Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC*, No. 18-CV-1025, 2018 WL 6344188, at *1 (E.D.N.Y. Dec.

5, 2018) (holding $90 to be a reasonable hourly rate for the work of legal assistants); *N.Y.C. Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund*, No. 16-CV-3429, 2018 WL 3768586, at *5 (E.D.N.Y. July 23, 2018) (same), *report and recommendation adopted*, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Sanders Constr.*, No. 13-CV-5102, 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (same).  Accordingly, this Court respectfully recommends awarding fees for services rendered by legal assistants at the reduced rate of **$100** per hour.

In sum, this Court respectfully recommends an attorneys' fee award based upon a rate of **$290** per hour for Ms. Grancio's work, **$200** per hour for Ms. Moosnick's work, **$100** per hour for Mr. Vani's work, and **$100** per hour for the work performed by legal assistants.  Plaintiffs' counsel and legal assistants together expended a total of 48.8 hours on this matter.  Grancio Decl. ¶ 20; Billing Records (Dkt. 14-4); *see also* Supplemental Declaration of Adrianna R. Grancio ¶ 11 (Dkt. 22).  This Court finds that the amount of time spent on this matter is within a reasonable range of time to prepare a complaint and motion for entry of default judgment, particularly one requiring plaintiffs' counsel to review extensive records and prepare a number of detailed declarations, as is the case here.  *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Shelbourne Constr. Corp.*, No. 19-CV-2312, 2020 WL 1668041, at *9 (E.D.N.Y. Mar. 5, 2020) (awarding V&A fees for 45.30 hours of work in a similar ERISA action), *report and recommendation adopted*, 2020 WL 1666461 (E.D.N.Y. Apr. 3, 2020); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834, 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3,

2022) (awarding V&A fees for 39.4 hours of work in a similar ERISA action even though this amount was "slightly higher than the amount of time typically spent on such motions, [because it is still] within the range of reasonable hours expended in similar ERISA cases involving default judgment."), *report and recommendation adopted*, 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022). Accordingly, this Court respectfully recommends awarding plaintiffs **$7,864.00** in attorneys' fees based on the following calculations:

|  | Hours worked | Hourly rate | Total |
|---|---|---|---|
| Ms. Grancio | 15.6 hours | $290 per hour | $4,524 (15.6 x $290) |
| Ms. Moosnick | 0.2 hours | $200 per hour | $40 (0.2 x $200) |
| Mr. Vani | 31.9 hours | $100 per hour | $3,190 (31.9 x $100) |
| Legal assistants | 1.1 hours | $100 per hour | $110 (1.1 x $100) |
| Total | 48.8 hours |  | $7,864 |

Finally, plaintiffs seek $495.77 in costs, including the filing and service fees. Grancio Decl. ¶ 22; Grancio Decl. Exs. O and P (Dkts. 14-4, 14-5). Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotations and citation omitted). This Court finds plaintiffs' costs to be reasonable, and respectfully recommends awarding plaintiffs **$495.77** in costs.

**Conclusion**

For the foregoing reasons, this Court respectfully recommends **granting** in large part plaintiffs' motion for default judgment against defendant on plaintiffs' ERISA and LMRA claims, and awarding plaintiffs the following relief:

(1)     Delinquent contributions of **$189,169.71**, union assessments and dues check-offs of **$16,879.76** as set forth in the Audit Report,[7] interest thereon at an annual rate of 10 percent to be calculated upon entry of final judgment, liquidated damages of **$18,916.97**, and audit fees and costs of **$5,890**;

(2)     Delinquent contributions of **$231,186.86**, and union assessments and dues check-offs totaling **$17,290.60** for the periods September 2021 and May 2022 through September 2022, interest thereon at an annual rate of 10 percent to be calculated upon the entry of a final judgment, and liquidated damages of **$23,118.69**;

(3)     Late payment interest of **$17,948.87** for the periods October through December 2016, May 2017, July 2017 through August 2018, October 2018, November 2018, February 2019 through June 2019, August 2019, November 2019, January 2020 through March 2020, June 2020, July 2020, and September 2020 through April 2022;

(4)     Post-judgment interest calculated at the statutory rate; and

(5)     Attorneys' fees of **$7,864.00** and expenses of **$495.77**.

A copy of this Report and Recommendation is being electronically served on counsel. Further, this Court directs plaintiffs' counsel to serve a copy of this Report and Recommendation

---

[7] The Audit report contains certain calculations that include rounding to the hundredth of the dollar.  The Court acknowledges and accepts the calculations included in the Audit Report as correct.

by overnight mail and first-class mail on defendant at its last known address and to file proof of service on ECF by **August 3, 2023**.  Any objections to the recommendations made in this Report must be filed with the Honorable Kiyo A. Matsumoto within 14 days after the filing of this Report and Recommendation and, in any event, on or before **August 14, 2023**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

      **SO ORDERED**

Dated: Brooklyn, New York
      July 31, 2023

                            s/ James R. Cho
                            James R. Cho
                            United States Magistrate Judge